Roland **TOUSSAINT** and Amelda **Toussaint**

v.

Roland **PERREAULT** and Juliet **Perreault.**

Roland **PERREAULT** and Juliet **Perreault**

v.

Roland **TOUSSAINT** and Amelda **Toussaint.**

Supreme Judicial Court of Maine.

July 26, 1978.

---

Marshall, Raymond, Beliveau, Dionne & Bonneau by Paul R. Dionne, Lewiston (orally), for plaintiff.

Solman, Page & Hunter by Robert H. Page, Caribou (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

This case is before us in the form of an interlocutory appeal by Roland and Juliet Perreault pursuant to Rule 72(c), M.R. Civ.P.[1]

We discharge the report and remand the case to the Superior Court for further proceedings.

## BACKGROUND INFORMATION

Roland and Emelda Toussaint (hereinafter Toussaints) initiated a civil action against Roland and Juliet Perreault (hereinafter the Perreaults), alleging various tortious acts,[2] including trespassing on the Toussaints' property in the Town of Eagle Lake. The Perreaults denied these acts, counterclaimed alleging trespass and acts of harassment by the Toussaints, and then filed a cross-complaint for the purpose of trying title to the land upon which the alleged trespass occurred. The Toussaints answered both the counterclaim and cross-action with a general denial.

The matter was heard before a single Justice of the Superior Court without a jury on October 16, 1975, who, on May 30, 1976, filed an "interlocutory finding as to boundaries only." Without repeating the details, this finding defined the disputed boundaries in such a manner as to be consistent with where the Toussaints claimed them to be. If the conclusion was legally correct, the end result would be to reduce the Perreaults' claimed 500' frontage on Eagle Lake by approximately one hundred feet.

The natural sequence of events thereafter would have been a further hearing to determine (1) where the boundary was on the face of the earth, (2) whether either the Toussaints or the Perreaults (or both) were guilty of trespass and/or any of the other alleged causes of action, and (3) the quantum of damages, if any. This hearing was never held and the case apparently remained dormant until August 5, 1977,[3] when the Perreaults filed a motion to report the case to the Law Court pursuant to Rule 72(c). In the interim the Justice who had conducted the initial hearing and had made the "interlocutory finding," died on July 16, 1977. The Rule 72(c) motion to report was of necessity presented by the Perreaults to another Justice of the Superior Court who signed an appropriate order on September 6, 1977, and the case in due course was argued before the Law Court.

---

1. "If the court is of the opinion that a question of law involved in an interlocutory order or ruling made by it in any action ought to be determined by the Law Court before any further proceedings are taken therein, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein."

2. Count I alleged numerous acts of trespass; Count II, conversion of property valued at $5,000.00; Count III, "wrongfully, intentionally, and maliciously" interfering with the plaintiffs' commercial camp ground business; Count IV, acts causing plaintiffs' suffering from mental anguish and anxiety."

3. The Perreaults filed a motion for more specific findings and, on August 18, 1976, the Justice complied therewith but without changing the ultimate result of his "interlocutory finding."

A report under Rule 72(c) does not automatically require the Law Court to decide the issue reported. In *Laverdiere v. Marden*, Me., 333 A.2d 701, 702 (1975), we held:

"The mere presence of Rule 72(c) as a device for interlocutory appeal of important or doubtful questions does not relieve the Superior Court of its responsibility to decide numerous difficult questions that are properly confided to its judgment and addressed to its discretion.

A report of an interlocutory appeal may be discharged without affording it full or necessary consideration on its merits. See *State v. Michaud*, Me., 244 A.2d 801, 802–03 (1968). Rule 72(c) provides only for the report of an interlocutory order or ruling to the Law Court; the Rule does not purport to govern the discretion of the Law Court in receiving or considering the report. The power to discharge a report inheres not only in our right and interest to control our own docket, but in our general powers of superintendence and supervision over inferior tribunals. See 4 M.R.S.A. §§ 7, 8."

Since *Laverdiere* this Court has again given consideration to the problem which arises when issues are reported which are not of that degree of legal importance prerequisite to the utilization of this appellate mechanism. In *State v. Placzek*, Me., 380 A.2d 1010 (1977), although we were then dealing with a report under Rule 37A, M.R. Crim.P., we adopted the rationale of two civil cases to determine the parameters which should guide us when called upon to exercise our discretion in accepting or rejecting a report. We utilized the language found in *Hand v. Nickerson*, 148 Me. 465, 469, 95 A.2d 813, 816 (1953), to point out that the question of law reported must be of sufficient importance *and* doubt to justify the report. It seems clear from the reasoning in *Placzek* that we deemed it inappropriate to report interlocutory rulings on which there was no serious dispute

on the legal issue and which involved only the resolution of a factual dispute between litigants. If a case is thus postured, the decision of the Law Court would have minimal precedential value. See *Huot v. Gendron*, Me., 284 A.2d 899 (1971).

In *Placzek*, as well as in *Hand v. Nickerson*, the Court did not discharge the report but, on the facts of those cases and in the interest of judicial economy, elected to decide the cases. However, we pointed out in *Placzek*, 380 A.2d at 1015, that

"[o]ur decision of this improvident report should not, however, be taken as any relaxation whatever of the strict requirements that must be met before a Superior Court justice submits an interlocutory question of law to this court for decision on report."

Reverting to the instant case, we have already pointed out that our resolution of the reported issue is only a prelude to a future hearing in the Superior Court in which several other issues will have to be determined. Our decision, should we accept the report, would determine only what the property line between the Toussaints and the Perreaults is as a matter of law. This is hardly a novel issue and requires merely the application of routine and well established legal rules pertaining to the interpretation of deeds. The report raises no constitutional issue and neither does it require the construction of any statute. It would have been in the interest of judicial economy in the Superior Court to have continued the litigation to its conclusion, from which an appeal to this Court could have been taken if desired. All of the issues could have been then presented to the Law Court in one appeal and would have avoided the "piecemeal" approach which we deplored in *Hand v. Nickerson*, 148 Me. at 467, 95 A.2d at 815.

The entry is:

Report discharged.[4]

---

4. In *Belanger v. Belanger*, Me., 240 A.2d 743, 744 (1968), where a justice other than the one who made an interlocutory ruling ordered the case reported under Rule 72(c), after deciding that the word "court" in the rule referred to the individual justice who had made the ruling in issue, we discharged the report, holding:

"This raises a question of judicial policy. In the interest of intracourt comity, without prejudice to the rights of an aggrieved party,

Remanded to the Superior Court for further proceedings.

we hold that Rule 72(c) M.R.C.P., new to our practice, is not to be interpreted as authorizing a member of the Superior Court to sponsor what is in effect an interlocutory appeal from a decision of another member of the same court."

Since we have discharged the report for other reasons, we do not find it necessary to decide whether the rule in *Belanger, supra*, should apply to this report which was ordered by a justice other than the one who made the ruling in issue.

We recognize the fact that Rule 72(c) contains no provision specifying the time in which the aggrieved party should file a motion to obtain the interlocutory report. On the unique facts of this case, where the Justice who had made the ruling died, we hesitate to formulate any rule which suggests the time span in which such a motion should be filed. We merely suggest that this opinion should not be construed as necessarily approving a delay of nearly a year from the filing of the interlocutory finding to the filing of a motion to report.