Robert WINCHENBACH et al.

v.

STEAK HOUSE, INC.

v.

Stephen B. RHOADES.

Supreme Judicial Court of Maine.

Argued Jan. 19, 1981.

Decided June 1, 1981.

**46**

Strout, Payson, Pellicani, Cloutier, Hokkanen & Strong, Robert J. Levine, Joseph M. Cloutier, Rockland, for plaintiffs.

Berman, Berman & Simmons, P. A., William Robitzek (orally), John E. Sedgewick, Jack H. Simmons, Lewiston, for Steak House.

Malcolm L. Lyons (orally), Augusta, for Rhoades.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN * and CARTER, JJ.

GODFREY, Justice.

In October of 1977, the plaintiffs brought an action against Steak House, Inc., pursuant to 17 M.R.S.A. § 2002 (1964), the "Dram Shop Act." [1] They alleged that Steak House had contributed to the intoxication of one Stephen B. Rhoades who, while thus intoxicated, caused injury to the plaintiffs. Thereupon Steak House, claiming that Rhoades was the "sole and proximate cause" of the plaintiffs' injuries, brought a third-party complaint against Rhoades, demanding indemnification for all sums for which Steak House might be found liable. Rhoades moved to dismiss the third-party complaint and now appeals from the denial of that motion. The case reaches this Court on order of report from the Superior Court. We discharge the report as improvidently granted.

Rhoades's motion to dismiss the third-party complaint was based on the theory that because the pleading did not allege Rhoades was liable to Steak House, there was no legal basis for Steak House to demand indemnity from Rhoades. The parties submitted to the Superior Court memoranda of law on whether a defendant under the Dram Shop Act is barred, as a matter of law or policy, from seeking indemnification from the intoxicated customer who directly harms the plaintiff. Although Steak House had not sought contribution from Rhoades, it supported its argument against dismissal of its third-party complaint with cases which recognized the right of a dram shop defendant to seek contribution from its inebriated patron.

On April 3, 1978, a Superior Court justice issued an order denying Rhoades's motion to dismiss. Without ruling on the issue of indemnification, the justice denied the motion on the ground that Steak House was not precluded from seeking contribution from Rhoades. Steak House never amended its third-party complaint to include a claim for contribution.

Two years passed during which plaintiffs entered into a settlement with Steak House providing that plaintiffs would receive a certain sum if the Law Court ruled that

---

* Glassman, J., sat at oral argument and in the initial conference but died before this opinion was adopted.

1. Every wife, child, parent, guardian, husband or other person, who is injured in person, property, means of support or otherwise by any intoxicated person or by reason of the intoxication of any person, shall have a right of action in his own name against anyone who, by selling or giving any intoxicating liquors or otherwise, in violation of law, has caused or contributed to the intoxication of such person. In such action the plaintiff may recover both actual and exemplary damages. The owner, lessee or person renting or leasing any building or premises, having knowledge that intoxicating liquors are sold therein contrary to law, is liable, severally or jointly, with the person selling or giving intoxicating liquors. In actions by a wife, husband, parent or child, general reputation of such relationship is prima facie evidence thereof, and the amount recovered by a wife or child shall be her or his sole and separate property.
17 M.R.S.A. § 2002 (1964).

Rhoades's motion to dismiss was properly denied, and a different sum if the Law Court held that the motion should have been granted. There was no provision in the settlement for an alternative outcome if the Law Court made any other type of ruling.

On July 28, 1980, a different Superior Court justice approved the settlement and granted it the force of a final judgment. On the same day, he ordered the case reported to the Law Court on the grounds that the parties agreed to the report and the case involved "an important question of law which, when decided by the Law Court, will finally dispose of the action."

■ The reporting of cases to the Law Court pursuant to M.R.Civ.P. 72 is intended to serve as a means to obtain "speedy adjudication of difficult questions." *See* 2 R. Field, V. McKusick & L. Wroth, *Maine Civil Practice* § 72.5 (1970 and Supp.1977). The Law Court retains discretion to discharge a report when the purpose of Rule 72 is not served or where to adjudicate the reported questions would be inconsistent with the Court's function as an appellate tribunal. *Giles v. Maine Fidelity Life Ins. Co.*, Me., 402 A.2d 473, 475 (1979).

Rule 72(a) requires any question reported to the Law Court to be both doubtful and important. The importance of the question must be evaluated in terms of the interest of both the public and the parties in its resolution. Furthermore, we have stressed that a case on report must be presented with sufficient clarity so that this Court can appraise in advance the impact of its decision. *Giles v. Maine Fidelity Life Ins. Co., supra,* at 475–76.

The instant case presents an example of how Rule 72(a) may be misused. We must assume that the Superior Court justice who reported the case did so under subsection (a) of Rule 72: although the parties requested a report under both subsections (a) and (c), the justice did not make the finding necessary for applicability of subsection (c).

Regardless of which subsection was employed, we cannot see how the report of this case advances the "speedy adjudication of difficult questions." The parties did not seek report until two years after the Superior Court denied Rhoades's motion to dismiss. The parties did not ask the justice who originally heard that motion and ruled on it after argument, to report the action to the Law Court; hence, we do not have the benefit of the opinion of that justice, who was thoroughly familiar with the case, on the doubtfulness and importance of the question resolved by his ruling which is now belatedly proffered to us on report.

■ To take this case on report under Rule 72(a) would place the Law Court in a position that is inconsistent with its function as an appellate tribunal. The Court is not obliged to decide reported questions according to parameters specified by the parties, and it does not sit in order to serve, even indirectly, as mediator of settlement negotiations or as arbiter of disputes arising during such negotiations. It may decline to consider the questions at all.

■ Were we to attempt to resolve the issue reported in this particular case, we would have to overlook procedural anomalies engendering doubt whether we are presented with an actual controversy for decision or merely an abstract question for an advisory opinion.[2] For example, it is doubtful that the third-party complaint states a claim on which relief can be granted: Steak House alleges, in substance, merely that it has denied liability to the plaintiffs on any and all grounds alleged by plaintiffs and that Rhoades was the sole and proximate cause of their injuries. Nothing in the third-party complaint suggests any basis for the further allegation that if Steak House were adjudged liable in damages to the plaintiffs, it would then be entitled to judgment against Rhoades "for indemnity for the whole amount of damages, costs and interest which may be ordered to be paid to plaintiffs." Even by resort to inference from allegations in the original complaint and answer, it cannot be

**2.** *See Chandler v. Dubey*, Me., 378 A.2d 1096, 1099 (1977).

concluded from the third-party complaint that Steak House is alleging that Rhoades purchased liquor there or had any other connection with Steak House. Certainly the third-party complaint makes no such allegation directly, and, in its answer to the original complaint, Steak House denies the plaintiffs' allegation that defendant caused or contributed to Rhoades's intoxication. Without some nexus between Steak House and Rhoades, there is no possible basis for indemnity or any other claim against Rhoades. In short, neither on its face nor taken in context with the other pleadings, does the third-party complaint properly implead Rhoades. In effect, it merely operates to proffer the substitution of Rhoades instead of Steak House as the party really liable to the plaintiffs. Such a proffer of a substitute defendant is not the proper function of impleader under M.R.Civ.P. 14. 1 R. Field, V. McKusick & L. Wroth, *Maine Civil Practice* § 14.2 at 291 (1970).

Moreover, we are asked to decide the propriety of indemnity in a situation where the Superior Court rested its decision, inexplicably, on the possibility of contribution despite the absence of any language in the third-party complaint that even purports to assert a claim for contribution, as distinguished from indemnity.

The entry is:

Report discharged.

All concurring.